UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL W. EMMONS,

    Plaintiff,

v.                                                                         Case No. 04-74341

S.L. BURT, C. VALLIE, G. RICHARDS,          HONORABLE AVERN COHN
LARRY MCMILLAN, G. MACLANE, and
JOHN DOE,

    Defendants.

_____/

**MEMORANDUM AND ORDER
DIRECTING DEFENDANTS TO ANSWER THE COMPLAINT
AND APPOINTING COUNSEL FOR PLAINTIFF**

**I. Introduction**

This is a pro se prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Carl Emmons (Emmons) currently is incarcerated at the Parnall Correctional Facility in Jackson, Michigan.[1] Petitioner seeks both damages and equitable relief. The actions that form the basis of this lawsuit occurred while Emmons was incarcerated at the Southern Michigan Correctional Facility (JMF) in Jackson, Michigan. Emmons is suing the following Defendants:

    (1)    S.L. Burt (Burt), the JMF warden;

    (2)    C. Vallie (Vallie), JMF's director of programs;

---

[1] The Michigan Department of Corrections' Offender Tracking Information System (OTIS) and Emmons' most recent filings with the Court indicate that Emmons is now housed at the Parnall Correctional Facility. At the time of the complaint, however, Emmons was incarcerated at the Cooper Street Correctional Facility in Jackson, Michigan.

    (3)    G. Richards (Richards), JMF's assistant resident unit supervisor;

    (4)    Larry McMillan (McMillan), JMF's grievance coordinator;

    (5)    G. Maclane (Maclane), JMF's grievance reviewer;

    (6)    JMF medical provider John Doe; and

    (7)    James Armstrong (Armstrong), the Michigan Department of Corrections' manager of prisoner affairs.

Emmons claims that he arbitrarily was denied access to JMF's books-on-tape program, arguably in violation of the Americans with Disabilities Act and equal protection.

Emmons filed this action on October 13, 2004 in the United States District Court for the Western District of Michigan. On November 8, 2004, the judge assigned to the case entered a Partial Judgment and Order of Transfer. The judge found that Emmons failed to state a claim upon which relief can be granted with respect to Armstrong. Accordingly, the judge ordered that the claims against Armstrong be dismissed and that Armstrong be dismissed as a defendant. The judge also ordered that the case be transferred to this district under 28 U.S.C. § 1406(a).[2] On January 31, 2005, the Court, as is its custom in pro se cases prior to the filing of an answer, referred the case to the assigned magistrate judge. The assigned magistrate judge then reviewed the complaint preliminarily to determine if the case should go forward.

Before the Court is the magistrate judge's Report and Recommendation (MJRR) recommending that the case be dismissed on the grounds that Emmons failed to exhaust his administrative remedies prior to filing suit in federal court, in violation of the

---

[2] Under section 1406(a), venue in this district is proper because the events giving rise to this action occurred within the geographical boundaries of this district.

Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). For the reasons that follow, the Court REJECTS the MJRR and requires that an answer be filed.

## II. Background[3]

### A. The Basis for Emmons' Claims

Emmons has had ocular histoplasmosis since the fall of 1985.[4] He is legally blind. In November 2001, Emmons asked his prison counselor, Ms. Hoffman, about the requirements for him to enroll in the books-on-tape program. Hoffman told Emmons to contact either the prison library or the prison school. On November 13, 2001, Emmons "kited"[5] the JMF health care division and requested that it notify the prison library that Emmons is legally blind so that he could enroll in the books-on-tape program. On November 15, 2001, Emmons sent another kite to the prison's health care division and requested that it notify the principal of the prison's school that Emmons is legally blind. During a regular visit to the prison library later that month, Emmons inquired about the approval process for the books-on-tape program. The librarian, whose name Emmons

---

[3] The background is gleaned from the complaint. Because this is a pro se complaint, the Court construes it liberally in favor of the pro se party. Haines v. Kerner, 404 U.S. 519 (1972).

[4] The National Eye Institute of the U.S. National Institutes of Health reports that ocular histoplasmosis (OHS) is a serious eye disease and a leading cause of vision loss in Americans ages 20 to 40. See http://www.nei.nih.gov/health/histoplasmosis/index.asp. OHS develops when abnormal blood vessels grow underneath the retina and form a lesion. Id. Left untreated, the lesion can turn into scar tissue and lead to vision loss. Id.

[5] In prison nomenclature, a "kite" is a form designed for inmates to use in communicating with prison employees. See generally Wolfel v. Ferguson, 689 F. Supp. 756, 758 (S.D. Ohio 1987). The Oxford English Dictionary notes that it also is used as a form of slang, meaning a communication smuggled into, out of, or within a prison. See OXFORD ENGLISH DICTIONARY (2d ed. 1989).

does not know, told him that the prison's medical division was responsible for the program. Emmons then sent a kite to JMF medical, which responded that Emmons should send a kite to Duane Waters Optical, which apparently had the authority to approve his request for the program. Finally, by November 28, 2001, a staff physician approved Emmons' application for the program. Emmons sent the completed application to the Washtenaw County, Michigan Library.[6]

In January 2002, Emmons began receiving books-on-tape cassettes at the prison. He had not, however, received a tape player so that he could listen to the tapes. He wrote to the Washtenaw County Library in April 2002 and inquired about the status of the tape player. The library responded that it had sent the player to the prison in mid-March 2002. Emmons subsequently received a "notice of package/mail rejection" that indicated that the prison received the tape player but that Emmons could not obtain it because he did not have prior authorization to receive it. Emmons requested a hearing about the package rejection, and a prison official told him that he needed to receive authorization for the tape player from the prison medical division. Emmons sent a request to JMF medical on May 14, 2002, but he did not receive a response.

---

[6] Although the complaint is not clear, it appears that the Washtenaw County Library was responsible for sending books on tape to JMF for prisoners like Emmons who were approved for the program.

## B. Administrative Grievance Process

**1.**

Based on his inability to obtain the tape player, Emmons on May 16, 2002, filed a grievance with the prison, known as a Step I grievance, identifier number JMF 02-05-1905-19Z.[7] He stated the issue as follows:

> Talked to counselor, 4D was told that library took care of (library for the blind) tape player. Library told me medical took care of that. Medical told me D.W. Optical did that. D.W. Optical signed application/approval. Now I am being denied the tape player that has been hear [sic] since mid-March. And I have 8 books on tape that was sent with it.

Emmons stated that he spoke with assistant resident unit supervisor Landrum about the matter before filing the grievance.

On June 18, 2002, the prison issued its "Step I Grievance Response," which concluded that "Prisoner Emmons has a need for the machine being loaned to him per medical and the unit shall be allowed into him for playing the tapes that were allowed in."

Emmons subsequently received the tape player, but in June 2003, a prison librarian told Emmons that the prison could no longer accept books on tape for him and that he should stop ordering tapes. The Washtenaw County Library in March 2004 responded to a request by Emmons to receive a books-on-tape catalog and noted

---

[7] The Michigan Department of Corrections' grievance process consists of three steps which are articulated in the Department's Policy Directive 03.02.130, effective December 19, 2003. A Step I grievance is the first level of the grievance process. A prisoner who is dissatisfied with the response received at Step I may file a Step II grievance, which is essentially an appeal of Step I. Finally, a prisoner who is dissatisfied with the response received at Step II may file a Step III grievance with the Department's Prisoner Affairs Section.

"Lansing says cancelled.  Not eligible for service.  Message from facility in Jackson," apparently indicating that Emmons no longer was eligible for the books-on-tape program.

**2.**

On March 16, 2004, Emmons filed a grievance, identifier number JMF/2004/03/0608/28B.  He stated the issue as follows:

> I am being denigned [sic] service for the books on tape program because this facility states that I'm "not eligible" for the program.  On 022902 I followed all steps, counselor, library, medical, DW Optical and qualified/approved for this program.  And received tapes/magazines until June 2003.

Emmons also noted that he talked with assistant resident unit supervisor Richards before filing the grievance.

The portion of the grievance form captioned "response" states as follows:

> Untimely – you claim you were denied tapes in February [illegible] but provide no reason for delay.  Vague.  You write you did receive tapes in June 2003 and provide no reason for this grievance or allege a violation of a specific policy.

Emmons received a grievance rejection letter dated March 17, 2004, which indicated that his grievance was rejected because it was vague.

**3.**

Emmons resubmitted his grievance on March 19, 2004, identifier number JMF/2004/03/0624/28B.  He again noted that he talked with assistant resident unit supervisor Richards prior to filing the grievance.  He stated the issue as follows:

> Letter from Washtenaw Co. Library states that this facility (JMF) says that I'm not eligible to receive the books on tape program.  I am legally blind.

Under the section captioned "response" on the grievance form, it states:

6

> Vague – what violation of policy is alleged.  Did you contact the library?
> Need more information.

A grievance rejection letter dated March 22, 2004, states that Emmons' grievance was again rejected because it was vague.

**4.**

On March 29, 2004, Emmons filed a Step II grievance, identifier number JMF/2004/03/0624/28B.  He stated the reason for his appeal as follows:

> D.W. Optical HACM screen indicates I'm visually impaired.  On 8-1802 [sic] I was eligible for books on tape which I received until June 2003.  When I wrote Washtenaw Library about this, see attachment, my vison [sic] will never improve and I'm still eligible.  I would like this matter cleared up and start receiving tapes again.

On March 31, 2004, JMF issued a "grievance appeal receipt" that acknowledged receipt of Emmons' Step II grievance and indicated that he should be provided a response within 15 business days of the date of his appeal.  It also explained that he could file a Step III appeal, the final level of appeal, if he did not receive a response to his Step II grievance by April 21, 2004.

On April 16, 2004, prison officials forwarded Emmons the response to his Step II grievance.  The response noted that the Step I grievance was rejected as vague and that he did not provide any reason for appeal or demonstrate that an error was made in the Step I rejection.  The response concluded that "[w]ith no violation of policy demonstrated, the step I rejection is supported at this level and no further action is warranted.  **This appeal is denied.**"  (Emphasis in original).

7

**5.**

On April 29, 2004, Emmons filed a Step III grievance with the Michigan Department of Corrections in Lansing, Michigan. Emmons had not received a response by July 12, 2004, so he wrote a letter to the Michigan Department of Corrections' director's office and stated that the "grievance process has been violated." He also stated in the letter that he was willing to grant the department a 15-day extension to respond.

On July 28, 2004, the Michigan Department of Corrections responded to Emmons and stated that a response to his Step III grievance would be mailed to him within five days. The response, dated July 29, 2004, upheld the Step I and Step II responses and concluded that

> [t]he record supports that staff properly responded to this grievance. Additional information has not been presented to demonstrate an error in this determination. This decision is upheld at this level. This grievance appeal is denied.

### C. Relief Requested

Emmons seeks equitable relief in the form of restoration of the books-on-tape program, including receiving the books-on-tape player and low-vision equipment. He also seeks compensatory damages in the amount of $115,500.00 and punitive damages in the amount of $7,500.00 for each defendant.

### III. Discussion

The record as it stands now indicates that prison officials have unduly hindered Emmons' ability to participate in the books-on-tape program, particularly in light of the fact that prison officials allowed him to receive books on tape but did not allow him to

receive a tape player that would enable him to listen to the cassettes he received. Under these circumstances, it is appropriate to require an answer before proceeding further, as it may well be that Emmons has satisfied the exhaustion requirement with respect to equitable relief as distinguished from damages.  Given the complexity of the process, it is also appropriate to appoint counsel for Emmons.

Accordingly, the Court directs defendants to answer the complaint.  The Court also directs the deputy clerk to appoint counsel for Emmons so that he can have legal representation for this action.

SO ORDERED.

Dated:  June 3, 2005

           s/Avern Cohn
           AVERN COHN
           UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, June 3, 2005, by electronic and/or ordinary mail.

           s/Julie Owens
           Case Manager, (313) 234-5160